IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **KEVIN RAY MABRY,** | § | |
| Plaintiff, | § | |
| | § | |
| *v.* | § | Civil Action No. 3:12-CV-2170-M-BK |
| | § | |
| **CAROLYN COLVIN,** | § | |
| **Acting Commissioner of Social Security,** | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to the District Judge's order of referral, the undersigned now considers the parties' cross-motions for summary judgment. For the reasons that follow, it is recommended that Plaintiff's *Motion for Summary Judgment* (Doc. 23) be **DENIED**, Defendant's *Motion for Summary Judgment* (Doc. 24) be **GRANTED**, and the Commissioner's decision be **AFFIRMED**.

**I. BACKGROUND**[1]

**A. Procedural History**

Plaintiff seeks judicial review of a final decision by Defendant denying his claim for Supplemental Security Income ("SSI") benefits under the Social Security Act ("the Act"). In January 2006, Plaintiff filed for SSI, claiming that he became disabled in August 2004, as a result of schizoaffective disorder, major depressive disorder and back problems. (Tr. at 39-40, 145–150). Plaintiff's application was initially denied by the Administrative Law Judge, but was subsequently remanded by the Appeals Council for further proceedings. (Tr. at 80–93, 94–96, 97–101, 103–106). On remand, Plaintiff, through counsel, changed his disability onset date to

---

[1] The following background comes from the transcript of the administrative proceedings (Doc. 21), which is designated as "Tr" and followed by the stamped page number(s).

1

July 16, 2009, the date he was first seen by mental healthcare professionals following his release from prison.[2] (Tr. at 39). Denials at all applicable administrative levels followed, and Plaintiff now appeals to this Court pursuant to 42 U.S.C. § 405(g). (Tr. at 1–6, 15–30).

### B. Factual Background

At the time of his alleged onset of disability, Plaintiff was 47 years old and was unemployed. (Tr. at 42). He obtained his GED after dropping out of high school in the ninth grade, and was previously employed as a furniture builder and warehouse worker. (Tr. at 401).

Plaintiff's lower back issues apparently stem from injuries he sustained in 1998 and 2000 while working. (Tr. at 43–45, 255, 404). Although there is no documentation in the record, Plaintiff testified that, in response to his injuries, he underwent physical therapy for about five weeks in 1998 and received epidural steroid injections. (Tr. at 404; Doc. 23-1 at 6).[3] Plaintiff also previously had been examined for chronic low back pain, osteoarthritis, and degenerative disc disease. (Tr. at 39, 405–06, 635).[4]

In September 2009, Plaintiff was seen by Dr. Christie Egbuchuham with complaints of lower back pain while standing, walking and running, which was alleviated by sitting or lying down. (Tr. at 633). Plaintiff underwent an x-ray of his lumbar region that revealed osteoarthritis involving the last two lumbar segments and subtle disc space narrowing due to degenerative disc

---

[2] In his findings, the ALJ mistakenly stated the amended alleged onset date as June 12, 2009, the date Plaintiff was released from prison. (Tr. at 19).

[3] Though a part of the record, Plaintiff's medical records from the time of his injuries until his alleged onset date of July 16, 2009, are not of particular relevance.

[4] In addition to his lower back impairment, Plaintiff has a history of headaches, knee surgery, diabetes mellitus, affective disorder not otherwise specified, schizoaffective disorder, antisocial personality disorder, and polysubstance addiction disorder. (Tr. at 20). Those impairments are not further discussed because Plaintiff only relies on his lower back impairment in support of his appeal to this Court.

disease. (Tr. at 635). In January 2010, Plaintiff complained of mild weakness on the right side, in addition to his back pain for which he was prescribed hydrocodone. (Tr. at 629–30). In February 2010, he stated that his pain was worsening and he experienced tingling. (Tr. at 627). Upon examination, Plaintiff was stiff in his movements and unable to walk on his heels or toes or squat. (Tr. at 628). Dr. Muhammad A-Sattar indicated that Plaintiff had back pain with radiculopathy bilaterally, and opined that Plaintiff had numbness secondary to diabetic neuropathy. *Id.*

On April 5, 2010, Plaintiff underwent an MRI of his lumbar spine that revealed degenerative disc disease at L5–S1 with encroachment on the descending left S1 nerve root. (Tr. at 609). On April 20, Plaintiff presented to Dr. Troy Caron with a constant sharp pain across his lower back, with pain going into his posterior buttock, down his right-lower extremity to his knee and occasionally down to his toes, with numbness and tingling. (Tr. at 601). Dr. Caron noted that Plaintiff described right-sided symptoms but his MRI indicated a left-sided disc issue. *Id.* Plaintiff responded that he might have misinformed Dr. Caron, and reported that his symptoms were indeed left-sided. *Id.*

On June 2, 2010, Plaintiff presented to Dr. Ahmad Elsharydah with lumbosacral pain radiating posterolaterally to his left leg down to the knee, with associated numbness and tingling in his left calf and foot. (Tr. at 715). Upon examination, Dr. Elsharydah found decreased range of motion to the lumbosacral spine with tenderness on palpation to the midline spine. (Tr. at 716). He also found Plaintiff's S1 not to be tender and Plaintiff's straight leg raise positive on the left side. *Id.* Plaintiff's motor strength was almost full on the left and full on the right. *Id.* Dr. Elsharydah diagnosed Plaintiff with low back pain, lumbar radiculitis, and degenerative disc disease, for which Plaintiff received an epidural steroid injection on July 28, 2010. (Tr. at 716,

763).  In September 2010, Plaintiff reported that the epidural steroid injection had given him about two weeks of relief, but his pain had returned to its previous levels.  (Tr. at 770).  An examination revealed tenderness over the facet joint line from L2–S1 and over Plaintiff's sacroiliac joints and sciatic notches, and Plaintiff was diagnosed with lumbago and lumbosacral spondylosis without myelopathy.  (Tr. at 771–72).

### C.  The ALJ's Findings

In January 2011, the ALJ issued a decision unfavorable to Plaintiff.  (Tr. at 15–26).  At step one, he found that Plaintiff had not engaged in substantial gainful activity from January 24, 2006, the application date.  (Tr. at 20).  At step two, the ALJ found that Plaintiff had the severe impairments of "degenerative disc disease of the lumbar spine, arthritis, headaches, history of knee surgery and diabetes mellitus, affective disorder not otherwise specified, history of schizoaffective disorder, antisocial personality disorder, and history of polysubstance addiction disorder."  *Id*.  At step three, the ALJ found that Plaintiff did not have an impairment that met or medically equaled the presumptively disabling conditions listed in 20 C.F.R. Part 404, Appendix 1.  *Id*.  The ALJ further found that Plaintiff had the residual functional capacity (RFC) to perform medium work, except that Plaintiff is "limited to simple routine tasks with occasional contact with the general public."  (Tr. at 21).  At step four, the ALJ found that Plaintiff had no past relevant work.  (Tr. at 25).  At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, there are jobs in the national economy that Plaintiff could perform.  *Id*.

In evaluating Plaintiff's RFC, the ALJ found that Plaintiff was able to lift and carry 50 pounds occasionally and 25 pounds frequently; and to stand, walk, or sit for six hours of an eight-hour workday.  (Tr. at 21).  The ALJ found Plaintiff's statements concerning the intensity,

persistence and limiting effects of his symptoms not credible to the extent they were inconsistent with the RFC assessment. (Tr. at 21, 24). The ALJ conceded Plaintiff's difficulty, but concluded his testimony was "not entirely credible in light of the medical history, the degree of medical treatment required, and [Plaintiff's] description of his activities and life style." (Tr. at 24). In discussing the conflicts between Plaintiff's statements and the medical record, the ALJ noted, *inter alia*, that Plaintiff did not have a significantly decreased range of motion; did not have any significant muscle weakness; did not have any reflex, sensory, or neurological deficits; had not undergone more aggressive therapy such as injections or physical therapy; had not undergone surgery on his back, nor had such ever been assessed as warranted by any treating physician; had no neuropathy resulting from diabetes mellitus; and had not required the use of any assistive walking device. *Id.* The ALJ also stated that no physician had referred Plaintiff for additional neurological or other appropriate examinations and no restrictions had been placed on Plaintiff by treating physicians. *Id.*

    **D. The Parties' Arguments**

In this appeal, Plaintiff's objections center on the ALJ's findings and conclusions related to his RFC assessment. Plaintiff contends the evidence proves he is much more physically limited than reflected in the RFC; thus, the ALJ's RFC assessment is not supported by substantial evidence. (Doc. 23-1 at 6–12). In particular, Plaintiff alleges that there is supporting evidence in the record of his back pain, dating back to 2002 and continuing through his diagnoses of chronic low back pain in 2006 and degenerative disc disease in 2009. *Id*. at 6–7. Plaintiff argues that the ALJ's finding that his range of motion was not significantly decreased is incorrect because the record indicates Plaintiff's limited range of motion in 2002, 2006 and 2010. *Id*. at 10. Plaintiff also contends the ALJ's finding of no neurological deficits or neuropathy is

wrong because he experienced decreased sensation on multiple occasions in 2010. *Id*. at 11. Plaintiff further argues that his physical therapy conducted in 1998 and his epidural steroid injections negate the ALJ's statement that Plaintiff has not had more aggressive treatment such as physical therapy and injections. *Id*. at 11–12. Fourth, Plaintiff avers that the ALJ improperly conducted his own RFC assessment, "playing doctor" in the absence of a medical source statement. *Id*. at 12. Finally, Plaintiff contends that the ALJ mischaracterized Plaintiff's statement that he could clean his house for hours. *Id*.

Defendant responds that the ALJ's thorough analysis of Plaintiff's limitations is based on substantial evidence. (Doc. 24 at 6–7). Specifically, Defendant argues that Plaintiff cannot fault the ALJ for his interpretation of medical evidence because that is the ALJ's function. *Id*. at 7. Defendant avers that only three of the occasions on which Plaintiff complained of a decreased range of motion took place after his onset date, which Defendant argues is too minimal to be disabling. *Id*. Defendant also argues that Plaintiff only cites to three occasions in 2010 to support his allegations of a chronic condition, but the medical evidence contains multiple normal physical examinations in the same time period. *Id*. at 8. Defendant further contends that Plaintiff's physical therapy in 1998 is too remote to overcome the ALJ's conclusion about his lack of more aggressive therapy, and that Plaintiff only had one steroid injection after his onset date. *Id*. at 8–9. Defendant asserts that there is no requirement in this circuit that the ALJ have sought a medical source statement and, in its absence, the Court's inquiry merely measures whether the ALJ's decision is supported by substantial evidence in the existing record. *Id*. at 9–10. Finally, Defendant argues that a conflict between Plaintiff's testimony and statement to a psychological examiner about his ability to clean the house is precisely the type the ALJ is entitled to resolve. *Id*. at 10.

## II. APPLICABLE STANDARD

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)–(f), 416.920 (b)–(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett*, 67 F.3d at 564. The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

### III.  DISCUSSION

The RFC is an assessment, based on all the relevant evidence, of a claimant's ability to do work on a sustained basis in an ordinary work setting despite his impairments. 20 C.F.R. § 416.945(a); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). It is the most that a claimant is able to do despite his physical and mental limitations, and The RFC is considered by the ALJ, along with the claimant's age, education and work experience, in determining whether the claimant can work. 20 C.F.R. § 416.920(a)(4); 20 C.F.R. § 416.945(a). In determining the RFC, the ALJ must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe. SSR 96-8p; 20 C.F.R. § 416.923.

In this case, the ALJ's RFC assessment is supported by substantial evidence. As the ALJ noted, the medical evidence of record is too remote and, thus, insufficient to establish disability. Specifically, the record reveals that two of the five times Plaintiff complained to doctors of limited range of motion occurred in 2002 and 2006 — both long before Plaintiff's onset date in 2009.[5] (Tr. at 243–44, 405); *see See Michlitsch v. Colvin*, No. 12-CV-0416, 2013 WL 1880399

---

[5] In 2002, Dr. Hardy was unable to identify a pathology to explain Plaintiff's back pain because

at *7 (N.D. Tex. 2013) (Cureton, J.), *adopted by* 2013 WL 1880768 (N.D. Tex. 2013) (McBryde, J.) (ALJ's misstatement concerning the dearth of medical evidence was harmless where all the objective medical evidence of plaintiff's condition pre-dated her amended disability onset date); *Hickman v. Astrue*, No. 08-CV-1194, 2009 WL 3190471 at *13 (S.D. Tex. 2009) ("During the relevant time period . . . there are no reports that [the claimant] complained of disabling side effects from medication."). While there is evidence that Plaintiff complained of a limited range of motion in 2010, such reports were sporadic — spaced over the course of February, June, and September — and more consistent with occasional flare-ups than a persistent problem. (Tr. at 628, 716, 771).

Moreover, though the medical records document Plaintiff's positive straight leg raise test in June 2010, they also show that only three months later, he had a negative straight leg raise test with normal range of motion and nearly perfect motor strength on both sides. (Tr. at 716, 771, 724). Although Plaintiff correctly notes there is evidence in the record that he experienced sensory deficits and numbness secondary to diabetic neuropathy, there are likewise medical reports documenting several examinations in 2010 where sensory and neurological deficits were not a substantial issue -- January 28, March 22, April 20 ("sensation is grossly intact") and April 23 ("negative for tingling" and "sensory lower limb intact"). (Tr. at 599–600, 601, 605, 629). In light of these and other inconsistencies in the record before him, the ALJ was entitled to weigh the evidence and conclude that Plaintiff retained the RFC to perform medium work. *See Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992) ("conflicts in the evidence are for the [Commissioner] to resolve") (citing *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983).

---

his vertebrae and disc spaces were maintained. (Tr. at 258). In 2006, Dr. Mudaliar acknowledged Plaintiff's subjective pain and limited range of motion, but both he and Dr. Michael Lanoux from the referral diagnostic center stated that the x-rays showed nothing abnormal about his lumbar spine. (Tr. at 405–06).

The ALJ was also within his authority to give whatever weight he deemed appropriate to the statement Plaintiff admittedly made to the examining psychologist that he could clean his house for hours.  Tr. at 24; (Doc. 23-1 at 12).

Moreover, Plaintiff's reference to treatments for his back pain well outside the relevant period, including 1998 physical therapy and steroid injections received in the early 2000's (*See* Doc. 23-1 at 11–12), do not contradict the ALJ's determination that Plaintiff did not seek more aggressive therapy.  The records reveal only one such treatment, a steroid injection in July 2010, during the relevant period.  (Tr. at 763–64).  *Cf. Hickman v. Astrue*, No. H-08-1194, 2009 WL 3190471, at *13 (S.D. Tex. 2009) ("During the relevant time period . . . there are no reports that [the claimant] complained of disabling side effects from medication.").  Thus, the ALJ's finding was based on substantial evidence.

Further, Plaintiff's charge that the ALJ improperly devised his own RFC determination in the absence of a medical source statement lacks foundation.  First, Plaintiff concedes that no treating physician prescribed restricted activity.  (Doc. 23-1 at 12).  Second, even where there is no medical source statement, the Court's inquiry remains whether the ALJ's decision is supported by substantial evidence.  *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).  And in this case, for the reasons detailed herein, the Court concludes it is.

Finally, Plaintiff argues that the ALJ did not perform a function-by-function analysis in assessing his RFC as purportedly required by SSR 96-8p.  (Doc. 23-1 at 5).  As Defendant rightly notes, SSR 96-8p does not require the ALJ to include such analysis in his written opinion, but requires only a "narrative discussion describing how the evidence supports each conclusion." *See* Social Security Ruling 96-8p, 1996 WL 374184 at *7 (July 2, 1996).  With regard to Plaintiff's symptoms, the ALJ was only required to be thorough, resolve inconsistencies, and set

forth a logical explanation of the symptoms. *Id*. In this case, the ALJ stated that he had considered all symptoms to the extent that they can reasonably be accepted as consistent with objective medical evidence. (Tr. at 21). In any event, Plaintiff's substantial rights were unaffected by the ALJ's failure to be more specific. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected.").

## IV.  CONCLUSION

For the foregoing reasons, it is recommended that Plaintiff's *Motion for Summary Judgment* (Doc. 23) be **DENIED**, Defendant's *Motion for Summary Judgment* (Doc. 24) be **GRANTED**, and the Commissioner's decision be **AFFIRMED**.

**SO RECOMMENDED** on February 6, 2014.

_____
RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE